CHICAGO (CLARK v.). See Case No. 2,817.

CHICAGO (COLLINS v.). See Case No. 3,011.

---

## Case No. 2,664.

### CHICAGO v. GAGE.

[6 Biss. 467; 1 N. Y. Wkly. Dig. 331; 9 West. Jur. 721; 8 Chi. Leg. News, 49; 21 Int. Rev. Rec. 374.] [1]

Circuit Court, N. D. Illinois. Oct., 1875. [2]

REMOVAL FROM STATE COURTS.

Where the real controversy is between a city and one of its citizens, a citizen of another state, claiming to be interested in the subject matter of the litigation, has not the right to remove the suit from the state into the federal court.

[Cited in Carraher v. Brennan, Case No. 2,441; Donohoe v. Mariposa L. & M. Co., Id. 3,989; First Presbyterian Soc., etc., v. Goodrich Trans. Co., 7 Fed. 261.]

In equity.

T. Lyle Dickey and Chas. H. Morse, Corp. Counsel, for complainant.

M. W. Fuller, for Wm. T. Ayres, intervening claimant.

BLODGETT, District Judge. This case was originally commenced in the superior court of Cook county, and removed to this court on the application of the defendant, Ayres. A motion is now made on behalf of the complainant to remand the case to the superior court, because of facts appearing upon the face of the record.

The record shows that, on the 27th day of December, 1873, David A. Gage and his wife, of the city of Chicago, executed and delivered to George Taylor, also of said city, a deed conveying to said Taylor, in trust, certain property for the purpose of securing the city against loss of any indebtedness which might exist from Gage to the city,

as late treasurer thereof, and for other purposes therein expressed. Said deed did not state what the amount of said indebtedness was, but declared that said conveyance was not to be, in any sense, a satisfaction of any part of said indebtedness. It included and conveyed to Taylor a large amount of real property situated in Chicago, and its suburbs, some portions of which were improved and yielding income. It empowered the trustee, during the period of eight months from the date of the deed, to enter immediately into the possession of said property, control and manage the same, receive and collect the rents, income and profits thereof, and out of the same pay the taxes, assessments and insurance; to sell and convey, under the direction and with the concurrence of the comptroller of the city, all or any part of said property, and out of the net proceeds of the said sales, rents, income and profits, to pay over to the city, from time to time, to apply on the indebtedness of Gage to the city, such sums as might be available for that purpose. At the expiration of eight months the comptroller was authorized to require the peremptory sale of so much of said property as should then remain unsold, for cash, and the said Taylor, as trustee, was required to comply with said request and apply the net proceeds of the sales so made to the satisfaction of the unpaid remainder of said indebtedness. Taylor accepted the trust, entered upon the possession, control and management of the property, and made some sales thereof, and partial payments to the city within the eight months allowed for that purpose.

After the expiration of said eight months, a large portion of the indebtedness, claimed by the city, against Gage, as its late treasurer, still remaining unpaid, the comptroller ordered the trustee to sell the rest of the property on hand, for cash. Said trustee refused to comply with the order of the comptroller, alleging as the ground of said refusal, that said deed did not state the amount of said indebtedness; that he did not know the amount of it himself, and that he was unwilling to sell and pay over the proceeds of such sale to the city until a competent court had first found and decreed the balance due from Gage to the city. Thereupon the city filed the bill in this case, in the superior court of Cook county, setting out the said trust deed, and alleging that at the time of the making thereof Gage was indebted to the city, as treasurer, for a balance of five hundred and seven thousand, seven hundred and three dollars and fifty-eight cents, for the security of which it was claimed that Taylor held the property so conveyed to him by said trust deed; and prayed that the court would take an account and ascertain the amount due, and give a decree in favor of the city for the same, and order the said trustee to proceed and sell the trust property remaining unsold, and apply the proceeds of

---

[1] [Reported by Josiah H. Bissell, Esq., and here reprinted by permission. 1 N. Y. Wkly. Dig. 331, contains only a partial report.]

[2] [Affirmed in Ayers v. Chicago, 101 U. S. 184.]

such sale to the satisfaction of the amount so found due. Gage and wife, and Taylor, were the only defendants to this bill.

Gage answered the bill, denying that he owed the city anything. Taylor also answered, stating his belief that the amount due from Gage to the city was that stated in the bill, but alleging that he did not know what was the real amount of said indebtedness, and prayed that the court would find and decree the amount of said indebtedness, and order the sale, and declare the amount to be paid by him out of the proceeds.

In February last, William T. Ayres, a citizen of Alabama, acting as executor for Charles P. Gage, deceased, late of said state of Alabama, recovered a judgment in this court against said David A. Gage for three thousand and six dollars and ninety-two cents. Execution was issued on said judgment, and returned "no property." Thereupon Ayres applied to the superior court to be made a party-defendant to the bill in this case, which application having been granted, he answered the bill, and also, by leave of court, filed a cross-bill, in both of which he alleged in substance the recovery in this court of said judgment against Gage, the issue of his execution and return, and charged that said judgment was an equitable and prior lien upon the property so held in trust by said Taylor; alleging that no indebtedness, in fact, existed from Gage to the city; that by the action of the common council of the city, Gage had been permitted to loan the funds of the city, and to pay certain interest arising therefrom to the city; that by reason of certain advances which had been made from certain of the general funds to certain specific funds by Gage while acting as city treasurer, certain equitable considerations had arisen which ought to defeat and did defeat any claim at law or in equity in favor of the city against Gage, praying it might be found and decreed that no indebtedness existed from Gage to the city, and that the property conveyed by Gage to Taylor, the trustee, be legally and equitably subjected to the lien of his judgment, as against the city, and asking the court to decree a satisfaction thereof out of the same.

After having filed his said answer and cross-bill, Ayres filed his petition in the superior court, setting up that he was a citizen of the state of Alabama; that there was a controversy in said suit between himself and said Gage and the city, who were citizens of the state of Illinois and of this district, and asking that said cause be removed from said superior court to this court for trial. The superior court entertained said petition and ordered the removal of said cause to this court; and the question is: Does there enough appear on the face of the record to justify this court in holding jurisdiction of the case?

The fifth section of the act of March 3, 1875 (18 Stat. 470, 472), provides, "that if, in any suit commenced in a circuit court, or re-moved from a state court to a circuit court of the United States, it shall appear to the satisfaction of said circuit court, at any time after such suit has been brought or removed thereto, that such suit does not really or substantially involve a dispute or controversy properly within the jurisdiction of said circuit court, or that the parties to said suit have been improperly or collusively made or joined, either as plaintiffs or defendants, for the purpose of creating a case cognizable or removable under this act, the said circuit court shall proceed no farther therein, but shall dismiss the suit, or remand it to the court from which it was removed, as justice may require."

The first question which suggests itself to my mind in discussing this motion, is, between whom is the controversy in this case? The original suit was brought by the city of Chicago to determine the amount of indebtedness due to it from Gage, and to require the payment of that indebtedness out of the property held in trust by Taylor, for that purpose. In his answer, in that case, Gage denied any indebtedness between himself and the city. I think it unnecessary for the purposes of this inquiry to investigate the grounds upon which Gage based that denial; it is sufficient for this motion, to say that by the bill, answer and replication in the case, as it stood at the time Ayres made himself a voluntary party thereto, the controversy in the case was between the city and Gage as to whether there was, in fact, an indebtedness, and the amount thereof, if any, from Gage to the city. The defendant, Ayres, does not raise any new controversy by his answer and cross-bill, but simply makes himself a party to that which already existed, alleging, perhaps, more in detail the grounds for denying any indebtedness from Gage to the city, but at the same time not changing in any degree the issue in the case or the character of the controversy. The main question still is, as the pleadings now stand, and as they stood before Ayres came into the case, does Gage owe the city anything which ought to be satisfied out of the proceeds of the property held in trust by Taylor, under the trust deed described in the complainant's bill? This being so, the controversy inaugurated in the suit is simply one between citizens of this state. True, Ayres, as a creditor of Gage, may be interested in the result of that controversy, because, if it terminates in favor of Gage, it leaves the property now held by Taylor subject, equitably if not legally, to Ayres' debt, but that does not in any degree, in my estimation, involve a controversy between the city and Ayres in the original suit.

As was intimated by the learned circuit judge of this circuit in the case of Osgood v. Chicago, D. & V. R. Co. [Case No. 10,604], the statute of March 3, 1875, clearly contemplates the removal of the whole suit from the state to the federal court, and not of

such fragment or part thereof as may involve a controversy or question between two or more of the defendants. And we must look into the nature of the original controversy, which was the subject matter of the suit, to settle this question of right of removal.

A complicated chancery suit may, almost necessarily, involve in some of its collateral issues, the rights and interests of citizens of different states; but, unless the original controversy which the suit is brought to determine be between citizens of different states, or between such parties as give the federal courts jurisdiction, it would hardly seem that congress intended to provide for the removal thereof, inasmuch as the whole case must be removed instead of that collateral branch or part involving a controversy between citizens of different states.

Applying these suggestions to the case under consideration, it would seem that the controversy as presented by the issues and pleadings, is as to whether or not Gage owes the city anything which should be paid out of this trust fund. That being determined, if determined against the city, the defendant, Ayres, may have a standing in court to claim his pay out of the trust property, but not until then. Notwithstanding Ayres' interpolation into the suit, the real question is still stand at issue between the city and Gage, and Ayres only has rights as he may be subrogated to those of Gage. It is nowhere intimated in this case that there is any collusion between Gage and the city, or that the city suit is not prosecuted in entire good faith. If it had been made to appear that Gage had given the trust deed to Taylor for the purpose of defrauding Ayres, or that the conveyance was not bona fide, the parties to the controversy might be changed, and Ayres, or any creditor of Gage, might be the real party to the controversy with the city and trustee; but there is nothing of the kind in this case. It therefore seems clear to me that, upon the facts shown in the record, this suit is not such an one as was intended to be removed from the state to the federal court.

The cause will therefore be remanded to the superior court of Cook county.

[NOTE. Ayres, the intervener, appealed to the supreme court, which affirmed the order of the circuit court. After the docket of the appeal, the complainant moved to dismiss, for the reason that the cause was not one from which an appeal would lie. This motion was overruled, the court holding that there was no doubt of its jurisdiction, as by the act of 1875, § 5 (18 Stat. 472), jurisdiction to review such an order was expressly conferred.

[The court then decided the case upon the merits, upon the following grounds, Mr. Chief Justice Waite delivering the opinion: That the original bill and cross bill constituted but one suit; that appellant had no separate dispute with either Gage or the city; that, at most, he and Gage had a controversy with the city as to its lien, and, Gage, who was on the same side of that controversy with him, being a

citizen of the same state as the city, the suit was not removable, under the rule settled in the Removal Cases, 100 U. S. 457; Ayers v. Chicago, 101 U. S. 184.]

CHICAGO (GARRISON v.). See Case No. 5,255.

CHICAGO (GOODRICH v.). See Case No. 5,542.

CHICAGO (LOMBARD v.). See Case No. 8,470.

CHICAGO (NICHOLSON v.). See Case No. 10,248.

CHICAGO (NORTHERN TRANSP. CO. v.). See Case No. 10,324.

CHICAGO (SCOTT v.). See Case No. 12,526.

CHICAGO (STOW v.). See Case No. 13,512.

CHICAGO (UNION NAT. BANK v.). See Case No. 14,374.

CHICAGO, A. & St. L. R. CO. (DENNISTON v.). See Case No. 3,800.

CHICAGO & A. R. CO. (BARLEY v.). See Case No. 997.

CHICAGO & A. R. CO. (ILLINOIS v.). See Case No. 7,006.

CHICAGO & A. R. Co. (JESSUP v.). See Case No. 7,300.

## Case No. 2,665.

CHICAGO & N. W. R. CO. v. CHICAGO & P. R. CO.

[6 Biss. 219; 7 Chi. Leg. News, 57; 9 Am. Law Rev. 362; 22 Pittsb. Leg. J. 74; 6 Leg. Gaz. 386.][1]

Circuit Court, N. D. Illinois. Oct., 1874.

4. A corporation created by the laws of another state, although associated with one of this state, and having common interest with it, is entitled to file a bill in this court and claim its protection.

[Distinguished in Chicago & W. I. R. Co. v. Lake Shore & M. S. Ry. Co., 5 Fed. 22; Horne v. Boston & M. R. R., 18 Fed. 51. Cited in Burger v. Grand Rapids & I. R. Co., 22 Fed. 562.]

[1] [Reported by Josiah H. Bissell, Esq., and here reprinted by permission. The statement is taken from 7 Chi. Leg. News, 57, 22 Pittsb. Leg. J. 74, and 9 Am. Law Rev. 362, contain only partial reports.]
[2] [From 7 Chi. Leg. News, 57.]